IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GEORGE L. FRENZLEY, JR.**

    **Plaintiff,**

v.   Case No.:  3:23-CV-61

**PAUL L. BROTHERS, IV,**
    Serve: 519 S. Independence Drive
         Montross, VA 22520
         (Westmoreland County)

    **Defendant.**

## COMPLAINT

COMES NOW, the Plaintiff, GEORGE L. FRENZLEY, JR., (hereafter "Plaintiff", "Frenzley", or "Mr. Frenzley"), by counsel, and hereby files his Complaint against the Defendant, Paul L. Brothers, IV. ("Deputy Brothers" or "Brothers"). In support of thereof, the Plaintiff states as follows:

## INTRODUCTION

1. This is a civil rights action in which the Plaintiff, George L. Frenzley, Jr., seeks relief for Defendant's violation of his rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States and made actionable pursuant to 42. U.S.C. §§ 1983 and 1988. Frenzley also brings this action to address personal injury suffered at the hands of the defendant under the laws of the Commonwealth of Virginia. Frenzley seeks compensatory and punitive damages, an award of costs, interest, attorney's fees, and such other and further relief as the Court deems just and proper.

2. The Plaintiff alleges that on April 3-4, 2021, Defendant Paul Brothers, a former deputy with the Westmoreland County Sheriff's Office, acting under the color of state law, exerted unnecessary and excessive force to execute an arrest for obstruction, an offense for which he arguably lacked probable cause, in violation of Frenzley's established right under the Fourth Amendment and applicable to the states by Fourteenth Amendment to be free from unreasonable seizure.

3. That in spite of Plaintiff's clearly established right, Brother's deployment of such force caused Plaintiff serious and permanent bodily injury.

## PARTIES

4. Plaintiff, George L. Frenzley, Jr. is a natural person and citizen of the United States, domiciled in the Commonwealth of Virginia.

5. Defendant, Paul L. Brothers, IV is a natural person and citizen of the United States, domiciled in the Commonwealth of Virginia. At all relevant times herein, Defendant Brothers was employed by the County of Westmoreland as a Deputy Sheriff with the Westmoreland County Sheriff's Office.

6. At all relevant times herein, Defendant Brothers was acting under color of state law and he is being sued in his individual capacity.

## JURISDICTION AND VENUE

7. This is a civil rights action seeking relief for the defendant's violations of the Plaintiff's rights under the Fourth, and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983.

8. This Court has personal jurisdiction over civil rights actions pursuant to 28 U.S.C. §§ 1331 and 1343 based on 42 U.S.C. § 1983.

9. Venue is proper in the U.S. District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 127 and 1391 and Local Civil Rule 3, in that the Defendant is subject to personal jurisdiction within the Eastern District of Virginia and the events that give rise to this action occurred with the Eastern District of Virginia.

## FACTUAL ALLEGATIONS

10. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs of the Complaint by reference and incorporation, as if fully set forth herein.

11. On or about April 3, 2021, Defendant and several deputies responded to the home of George and Gail Frenzley, in Montross, Virginia to provide assistance in the form of a Temporary Detention Order (TDO) for the Frenzley's adult son, Justin Frenzley.

12. Mrs. Frenzley had called the Westmoreland Sheriff's Office for assistance because Justin was experiencing a Schizophrenic episode and she had been unable to bring him under control.

13. Upon arrival at the residence, approximately four deputies, including defendant Brothers, encountered Mrs. Gail Frenzley and Justin in the front yard. Eventually, upon speaking with mental health workers over the phone, deputies were able to calm Justin and locate a place for him for admission.

14. As Mrs. Frenzley entered the home to pack a bag for Justin, she was followed by Deputy Brothers.

15. George Frenzley was asleep on the sofa until the point when Deputy Brothers entered the home. He was unaware of Mrs. Frenzley's call to police and oblivious to their arrival at his home.

16. When he awakened to find Deputy Brothers in his home, Frenzley stood and asked Deputy Brothers what was he doing in his house. In response, Brothers told Frenzley to sit down and shut up.

17. Frenzley sat down, but the fact that Brothers had told him to shut up didn't sit well with him and he began to mouth off at Brothers, telling him that he could not tell him what to do in his own house.

18. Fed up with Frenzley and having issued warnings that he would arrest him for obstruction if his behavior continued, Deputy Brothers threw him face down on the sofa, handcuffed him, and arrested him for obstruction. There is no cause of action being claimed for this particular arrest.

19. On the way to the sheriff's office, Frenzley was belligerent. He was clearly intoxicated and cursed Brothers incessantly for arresting him and treating him in such a manner.

20. For the most part, Brothers ignored Frenzley and did nothing to escalate the situation despite Frenzley's belligerence. Eventually, Brother's patience wore thin and he responded to Frenzley violently, causing him serious injury.

21. Upon arrival for booking at the Sheriff's Office, Frenzley continued to curse Brothers throughout most of the time required for him to be processed.

22. All toll, Brothers listened to Frenzley's verbal abuse for more than two hours.

23. At some point, Deputy Brothers stepped out of the booking area and asked Deputy Taylor Shackleford and Senior Deputy Johnson to watch Frenzley.

24. While Brothers was gone, Shackleford would assert that he and Johnson had casual conversation with Frenzley and had good rapport with him.

25. At the completion of the booking process, because of the tense interactions between Frenzley and Brothers, Brothers was instructed by a supervisor to ask Deputy Shackleford to transport Frenzley from the magistrate's office to the local jail. Shackleford asserts that Brothers explained the reason he was to transport Frenzley was because "I don't want anything else to happen between me and Frenzley. It's best for you to do the transport."

26. Plaintiff is uncertain what Brothers was referring to with his statement "anything else," but based on context it could be assumed Brothers meant that he did not want to have a second physical confrontation with Frenzley similar to the one he had had at Frenzley's home.

27. In response to the directive, Deputy Shackleford exited the booking area to move his car from the sally port in preparation to transport Frenzley.

28. An extraction from Defendant Brothers' body worn camera "BWC" attached hereto via flash-drive as EXHIBIT A, reveals that Frenzley appears to fall asleep or pass out on the bench while lying on his back for no less than two minutes while Deputy Shackleford is gone. BWC at 55:21 – 55:30.

29. Upon Shackleford's return, Brothers instructs Shackleford "let's get him up," wherein Frenzley can clearly be seen asleep until 57:39. Id. EXHIBIT A.

30. As Frenzley is awakening, Brothers announces "I'm going to take you out of these handcuffs and put you in these. If you try anything, it will not go good for you." Id.

31. Upon release of his right hand from the handcuff, Frenzley flinched his right arm with a closed fist and then he slowly began to lower his arm back next to his side. Id. at 57:47.

32. After a significant and noticeable pause, Brothers grabbed Frenzley's arm, snatched him from the bench and threw him face first onto the floor, placing his knee and body weight into Frenzley's rib cage. Id.

5

33. Deputy Shackleford had also been wearing his BWC as well, footage of which is attached as EXHIBIT B.

34. At the 00:24 mark of EXHIBIT B, Frenzley's flinch and the pause by Defendant Brothers can clearly be seen from the position Deputy Shackleford had taken behind Defendant Brothers.

35. When interviewed by an investigator from the Virginia State Police, Deputy Shackleford described the pause and his reaction thereto. Shackleford stated that when he saw Brothers grab Frenzley's arm, he started moving towards both of them to grab Frenzley's other arm because he thought that he and Brothers would handcuff Frenzley together. Shackleford went on to state: "I guess Deputy Brothers had other intentions to take Frenzley down."

36. As a result of the take down, Frenzley suffered a severe laceration between the bridge of his nose and forehead and intermittent periods of unconsciousness as he waited for medical transport.

37. During transport, Frenzley complained to Shackleford that his side was hurting.

38. Following treatment for his head injury and x-rays, Frenzley was transported back to Westmoreland County Sheriff's Department for detention, whereupon a call was received by Deputy Shackleford from the hospital advising that Frenzley had at least two broken ribs on his right side.

39. As a result of the incident following his initial booking, Brothers took out a felony warrant for assault on law enforcement and an additional obstruction warrant.

40. All charges, to include the original obstruction charges, were nolle prossed or dismissed.

41. As a direct and proximate result of Brothers' actions, Frenzley ultimately suffered a laceration to his head, a concussion, endured five days in jail, and was determined to ultimately have four broken ribs following re-evaluation due to complaints of continued severe pain in his side. Mr. Frenzley still experiences headaches and debilitating pain from the injuries to his head.

42. Shockingly, the Use of Force incident report was not forwarded to Lieutenant Colonel John Hoover through the normal chain of command. In fact, the Lt. Colonel knew nothing of the incident until Lieutenant Joshua Jones brought it to his attention.

43. On April 23, 2021, Joshua Jones asked Lt. Col. Hoover if a Use of Force report he had seen on his desk was that of Deputy Brothers? When he was told that it was not, but instead another matter altogether, Lt. Jones thought it pertinent that Lt. Col. Hoover watch the BWC video of the incident.

44. Immediately upon watching the video, Lt. Col. Hoover took steps to have Brothers patrol car picked up, his weapon surrendered, and placed him on administrative leave pending investigation into the matter. The administrative suspension occurred twenty days after the incident.

45. During his interview with the state police investigator, Lt. Jones was asked if he had ever encountered Frenzley on any previous occasion. Jones responded that had arrested Frenzley on two occasions a year or so ago, with each arrest involving intoxication. During each encounter, Jones stated that he never had to use force, but did have to listen to a lot of talk from Frenzley.

## COUNT I

**42 U.S.C. § 1983 – Unreasonable Seizure Effectuated by Excessive Force in Violation of the Fourth and Fourteenth Amendment**

46. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

47. At all relevant times to this action, Mr. Frenzley, a citizen of the United States and the Commonwealth of Virginia, had a clearly established right under the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, to be free from seizures effectuated through the use of excessive force.

48. Through his actions set forth herein, Deputy Brothers, while acting under color of state law, conducted an unreasonable seizure in that he employed excessive force in removing Frenzley from a position lying prone on his back and throwing him face down onto the concrete floor, in violation of his Fourth and Fourteenth Amendment rights.

49. Defendant Brothers violated Frenzley's right to be free from seizure effectuated by excessive force when he employed force disproportionate to the severity of the issue at hand where no crime was being perpetrated nor was there any threat to any officer or bystander.  Rather, the pause Defendant exhibited reveals that Brothers intended to feign the need for his exertion of force in response to Frenzley's repeated and drunken belligerence.  In short, Deputy Brothers tired of Frenzley's behavior and responded disproportionately to what amounted to no more than verbal abuse.

50. The facts presented herein show that Frenzley had no intention of striking Brothers at the time Brothers chose to forcefully retrain him causing multiple and severe injuries.  Instead, Frenzley had abandoned any notion of striking Brothers, if he truly had any such notion at all while lying prone on his back, and was clearly lowering his hand to his side when Brothers chose to attack him.

51. As a result of Frenzley's interaction with Deputy Brothers, he was forced to incur unnecessary medical costs and financial hardship due to the injuries he suffered, as well as the damages more specifically addressed in the "Damages" section below.

52. Deputy Brothers' use of excessive force on Frenzley establishes a cause of action pursuant to 42 U.S.C. § 1983 for monetary relief consisting of compensatory damages and punitive damages in the amount to be established at trial, as well as attorney's fees and costs pursuant to 42 U.S.C § 1988.

## COUNT II

### State Law Battery

53. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

54. Deputy Brothers unlawfully battered George Frenzley when he grabbed him, picked him up from the booking room bench, and slammed him to the floor while Frenzley was unarmed and not engaged in any activity that posed a threat to officer safety or any other person. The excessive force was unjustified and amounted to battery. *See* Gnat v. Commonwealth, 27 Va. App. 148, 151 (1998).

55. Deputy Brothers intentionally grabbed Frenzley and threw him to the floor with the intent to injure him after enduring incessant verbal abuse from Frenzley.

56. In doing so, Brothers committed an unwanted and unlawful touching upon Frenzley without Frenzley's consent, without excuse, and without any legal justification.

57. Specifically, any reasonable officer would know that it was unlawful to throw an elderly intoxicated man to the floor who was not engaged in any violent activity and presented no threat to the officer or anyone else.

58. As a direct and proximate result of Deputy Brothers' unlawful battery, Mr. Frenzley suffered substantial physical injury, mental anguish, and emotional harm.

59. Mr. Frenzley was also forced to incur unnecessary medical costs due to the facial laceration, concussion, and broken ribs he suffered as a result of his interaction with Deputy Brothers.

## DAMAGES

60. As a direct and proximate result of Defendant's unconstitutional and tortious conduct as set forth herein, Plaintiff suffered economic, physical, and emotional injuries, including:

a) Past, present, and future physical pain, mental anguish and trauma, emotional

pain, torment, and suffering;

b) Permanent physical injury, disability, and disfigurement;

c) Past, present, and future shame, fright, mortification, embarrassment, humiliation,

and loss of dignity;

d) Loss of wages and wage earning capacity; and

e) Significant past and future medical expenses;

62. Further, Mr. Frenzley respectfully asks that his Court award him expenses that he reasonably incurs in this litigation, including reasonable attorney's fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c)

WHEREFORE, Plaintiff George L. Frenzley, Jr. demands judgment against the Defendant, former Deputy Paul Brothers for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000), together with costs incurred in the pursuit of a just resolution of this matter, pre-judgment and post-judgment interest, and attorney's fees.

**A TRIAL BY JURY IS REQUESTED.**

                                      Respectfully submitted,
                                      GEORGE L. FRENZLEY, JR.

                                      /s/
                                    Thomas L. Johnson, Jr., VSB# 38814
                                    johnson@bajinjurylaw.com
                                    Christopher L. Anderson, VSB# 35173
                                    anderson@bajinjurylaw.com
                                    Bricker Anderson & Johnson, PC
                                    411 East Franklin Street, Suite 504
                                    Richmond, VA  23219
                                    (804) 649-2304
                                    (804) 649-3380 Fax
                                    *Counsel for Plaintiff*